UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ROBERT D. JONES,                          )
                                          )
                Plaintiff,                )
                                          )
v.                                        )        No.:   3:19-CV-398-TAV-DCP
                                          )
BRANDON STRYKER and                       )
PHILIP M. JINKS,                          )
                                          )
                Defendants.               )

## MEMORANDUM OPINION

This civil matter is before the Court on defendants Brandon Stryker and Philip M.

Jinks's motion for summary judgment, in which they assert qualified immunity [Doc. 36].

Plaintiff, proceeding *pro se*, responded in opposition [Doc. 42], and the defendants replied

[Doc. 46]. Long after the deadline for responding to the instant motion, plaintiff filed a

"Motion to Add Evidence that My Rights Were Violated" [Doc. 54], which the Court

interprets as a motion to submit additional evidence and arguments in opposition to the

motion for summary judgment. The matter is now ripe for adjudication. For the reasons

set forth below, the defendants' motion will be granted in part and denied in part.

## I.      Background

Herein follows a summary of the facts as presented in plaintiff's complaint. On

November 1, 2018[1], plaintiff Robert Dennis Jones ("Jones") was in a building located at

_____

[1] The complaint sets the date as November 15, 2018 [Doc. 1 at p. 4], but it is clear from
the rest of the evidence in the record that the actual date was November 1, 2018. As the date is
not material to the Court's decision, the Court will use the actual date to avoid confusion.

1612 Grainger Ave, Knoxville, Tennessee (the "Building") [Doc. 1 at p. 4]. At around 4:40 P.M., officers from the City of Knoxville Police Department served a no-knock warrant on the Building [*Id.*]. Jones was standing in a hall inside the Building at the time, and upon seeing the officers, at least one of whom was holding an assault rifle[2], Jones stepped into the kitchen [*Id.*]. Once in the kitchen, Jones clapped his hands, activating an "Eyespy" video camera[3] which had been installed recently [*Id.*].

A police officer (the "Arresting Officer")[4] entered the kitchen and pointed his gun at Jones [*Id.*]. The Arresting Officer told Jones to lay down on his stomach [*Id.* at p. 5]. Jones lay down on his stomach, face down [*Id.* at p. 4]. The Arresting Officer told Jones to put his hands behind his back, which Jones did [*Id.* at p. 5]. The Arresting Officer handcuffed Jones and emptied Jones's pockets [*Id.*]. After handcuffing Jones, the Arresting Officer used his "steel toed boots" to stomp on Jones's head multiple times, forcing Jones' face and head into the floor [*Id.*]. Jones screamed in pain and thought his "skull was cracked" [*Id.*]. After the Arresting Officer stopped, Jones told the Arresting Officer that he was being filmed [*Id.* at p. 4].

---

[2] The weapon is referred to as an AR-15 at one point [Doc. 1 at p. 4], and an AK-47 at another [Doc. 1 at p. 5]. The discrepancy is not material to the Court's ruling.

[3] Although Jones alleges he has video footage of the events inside the Building, he has not presented that evidence to the Court. Instead, Jones has stated that he will post the video footage on social media if the case is not resolved to his satisfaction [Doc. 1 at p. 4].

[4] In the complaint, Jones alleges that Brandon Stryker was the Arresting Officer. Jones later learned that it was Officer Shane Watson who performed the arrest [Doc. 22]. For the sake of clarity, the Court will refer to the officer who performed the arrest as the "Arresting Officer." The Court addresses the legal ramifications of this case of mistaken identity in more detail below.

2

Either the Arresting Officer [*Id*. at p. 5] or Officer Philip Jinks ("Jinks") [*Id*. at p. 4] then picked Jones up from the floor. Jones contends that his head was "swollen up" by that time, and that he was about to pass out [*Id.* at p. 4]. Jinks grabbed Jones and Jones asked Jinks for medical treatment [*Id.* at 4-5]. Jinks refused [*Id.*]. As a result of the alleged assault by the Arresting Officer, Jones claims that he has suffered a loss of hearing, severe, constant headaches, blurry vision, and nightmares [*Id.* at p. 6].

The complaint named several other officers as parties, but the Court ruled that the complaint only stated two claims: a claim of excessive force against the Arresting Officer and a claim against Jinks of deliberate indifference to Jones's need for serious medical care [Doc. 5]. Any claims against the remaining named officers were dismissed [*Id.*].

## II.     Summary Judgment

### A.     Standard of Review

Summary judgment is proper where there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court may consider the pleadings, discovery, affidavits, and other evidence on the record in ruling on a motion for summary judgment. *Id.* In the Sixth Circuit, there is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52. The Court must view the evidence in the light most favorable to the non-movant, as well as draw all reasonable inferences in the non-movant's favor. *See*

*Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). Thus, "the moving party has the initial burden of showing the absence of a genuine issue of material fact." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). On a motion for summary judgment by a defendant asserting a sovereign immunity defense, the Court must adopt the plaintiff's version of the facts. *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012).

Government officials are shielded from liability under the doctrine of qualified immunity "unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison v. Board of Trustees of Green Township*, 583 F.3d 394, 400 (6th Cir. 2009) (citation omitted). "A right is 'clearly established' if 'the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citation omitted).

### B.    Excessive Force

When considering a claim of qualified immunity, the Court must first define the right and determine whether that right was clearly established. A claim that a police officer used excessive force during an arrest falls under the Fourth Amendment. *Id.* "Whether an officer has exerted excessive force during the course of seizure is determined under an 'objective reasonableness' standard." *Id.* at 401 (citation omitted). "This entails 'balancing

4

the consequences to the individual against the government's interests in effecting the seizure." *Id*. (citations omitted). "The assessment involves a fact-specific inquiry based on the totality of the circumstances that 'pays particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citations omitted). A reviewing court analyzes the subject event in segments when assessing the reasonableness of a police officer's actions. *Id*. (citation omitted). In this instance, there are two distinct segments: (1) the events leading up to and including the handcuffing of Jones; and (2) the alleged use of force on Jones after he was handcuffed and under the control of the officers.

Based on the facts as presented in the complaint, Jones immediately complied with the Arresting Officer, laying down on his stomach and putting his hands behind his back [Doc. 1 at p. 4-5]. Jones does not allege that excessive force was used until after he was handcuffed, nor does he allege that he sustained any of the injuries at issue until after he was handcuffed [*Id.*]. The Arresting Officer disagrees. In his affidavit, the Arresting Officer describes the events as follows:

> Upon entering the residence, I observed the plaintiff flee towards the back of the residence and I followed in pursuit. The plaintiff ultimately ran into the kitchen where I saw him thrown an item that landed on the stove. I gave multiple verbal commands to the plaintiff to produce his hands. When the plaintiff did not comply with these commands, I forced the Plaintiff to the ground so that handcuffs could be applied to him. The plaintiff continued to resist on the kitchen floor, forcefully pulling his hands away from me and tucking them under his body. The plaintiff's continued resistance required the use of force to get the plaintiff's hands behind his back whereupon his

5

hands were placed in handcuffs. I did not use any further force on the plaintiff after he was placed in handcuffs.

[Doc. 36-3 at ¶ 5].

Normally, at summary judgment, the evidence must be viewed in the light most favorable to the plaintiff. However, for the sequence of events leading up to the moment when Jones was actually in handcuffs and under the control of the police, there is an exception: namely, the fact that Jones has pled guilty to, and was convicted of, resisting arrest [Doc. 29-1 at p. 3].[5] The Sixth Circuit has held that "[u]nder Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force." *Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016). Claiming the use of excessive force in such a case would challenge the validity of the underlying conviction of resisting arrest, which is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). However, claims of excessive force are only barred as to the use of force before the subject was handcuffed and in the control of the police. *Parvin*, 641 F. App'x at 450. "In such a case, the force would not be 'inextricably intertwined' with the suspect's resistance to arrest," and a section 1983 action as to the post-arrest use of excessive force would not be barred. *Id.*

---

[5] Jones argues that he was "forced" to enter a guilty plea to resisting arrest after he filed this 1983 action [Doc. 42 at ¶ 5]. That is an issue Jones would need to address in a challenge to the underlying state court conviction, not in this civil suit.

6

In this instance, defendants have submitted pictures of Jones laying on the kitchen floor, in restraints [Doc. 36-2, Ex. A]. There appears to be a minor cut or abrasion on Jones's elbow, and what may be a bruise on his lower back [*Id.*]. One of the photos also shows redness on Jones's face and neck, near his left ear [Doc. 36-7].[6] One of the booking photos of Jones shows what may be bruising on Jones's face, around his left ear [Doc. 44 at p. 7]. Jones contends that one of the pictures shows evidence of injuries, including marks on his face, elbows, ear, side of his head, and mouth [Doc. 42 at ¶ 11]. Regardless, some level of injury is shown, but there is no way for the Court to determine when those injuries were sustained, whether pre-arrest (meaning before Jones was in restraints and no longer resisting arrest) or post-arrest (when Jones was in restrains and when the Arresting Officer allegedly stomped on Jones's head multiple times). This presents a question of material fact which the Court cannot resolve at summary judgment.

The issue is further complicated by the fact that any "use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Morrison*, 583 F.3d at 404 (citations omitted). In clarifying this position, the Sixth Circuit explained:

> A police officer's use of force against a suspect is justified by the threat posed by the suspect to the safety of the office or others. By contrast, when a suspect has already been restrained, the officer's constitutional authority to use force is significantly more circumscribed. This constitutional line serves to ensure that a police officer's authority to use legitimate force to detain does not cross into physical abuse of an incapacitated suspect.

---

[6] The Court notes that the redness does not appear to be visible in the video footage submitted by defendants [Doc. 36-5]. Specifically, on Disc 1, at timestamp 17:14:32, on the camera showing the rear exterior of the vehicle, Jones is seen entering the back of the vehicle, and there is no apparent redness near Jones's left ear.

*Id.* at 405 (citation omitted). There is no *de minimis* injury requirement for excessive force claims in such a circumstance. "Rather, we have held that a plaintiff may 'allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause excessive physical damage.'" *Id.* at 407 (citation omitted). "'Gratuitous violence' inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial." *Id.* (citation omitted). Furthermore, the Sixth Circuit has held that "'In this Circuit, the law is clearly established that an officer may not use additional gratuitous force once a suspect has been neutralized.'" *Id.* at 408 (citations omitted).

The *Morrison* decision is of special interest in this case, because it involved a 1983 action which included an allegation that a police officer repeatedly pushed a subject's face into the dirt after that subject had been handcuffed and placed on the ground, though the officer's actions caused no significant physical injury to the subject. The court held that "it was 'obvious' that [the officer] could not push a handcuffed detainee's face into the ground when there lacked a genuine threat to the safety of the officers or others." *Id.* (citation omitted). In this case, Jones alleges that, after Jones was restrained, the Arresting Officer stomped on Jones's head repeatedly. It goes without saying that stomping on a restrained subject's head would constitute an unconstitutional use of gratuitous force. It is equally "obvious," under *Morrison* that a reasonable officer would know that such an act was unconstitutional, meaning the right at issue was clearly established. Accordingly, the Arresting Officer is not entitled to qualified immunity on the claim of excessive force.

8

Defendants argue that under *Scott v. Harris*, 550 U.S. 372 (2007) and its progeny, the Court is not required to defer to the plaintiff's version of events if that version is "blatantly contradicted by the record." *Scott*, 550 U.S. at 380. However, in addressing a similar case, *Amerson v. Waterford Township*, 562 Fed. App'x 484 (6th Cir. 2014), the Sixth Circuit ruled that *Scott* did not apply. *Amerson* involved a 1983 action in which plaintiff alleged that a police officer punched and kicked plaintiff in the head while plaintiff was lying on his stomach, with his hands cuffed behind his back, and offering no resistance. *Id*. at 486. There was no video footage of the incident, but the defendants relied on booking photographs and the interrogation video and argued that there were "no visible signs of injury – no swelling or bruising." *Id*. at 488. The *Amerson* court refused to apply *Scott*, finding that "the booking photographs and interrogation video only make Amerson's version of events less probable" rather than blatantly contradicting them. *Id.*

The Court notes that defendants have also submitted prison records showing that Jones was seen by a medical practitioner the day after the events in question, and the records show no indication of injury [Doc. 44, Ex. C]. However, the Sixth Circuit, interpreting *Scott*, noted that *Scott* involved a circumstance where the video evidence could "'speak for itself.'" *Oliver v. Greene*, 613 Fed. App'x 455, 457 (6th Cir. 2015) (quoting *Scott*, 550 U.S. at 378, n. 5). The Sixth Circuit went on to hold that "deposition testimony, affidavits, and prison records" do not qualify as evidence which rises to the level of speaking for itself. *Oliver*, 613 Fed. App'x at 457.

9

In this instance, no party has submitted video footage of the actual moment of arrest and the subsequent alleged use of excessive force. Had defendants presented video footage conclusively establishing that the Arresting Officer did not stomp on Jones's head, then *Scott* would apply. In the absence of such irrefutable evidence, the Court is required to view the facts in the light most favorable to the plaintiff.

Accordingly, for the reasons discussed above, defendants' motion for summary judgment will be denied as to the use of excessive force claim against the Arresting Officer. The Court turns next to the deliberate indifference claim against Jinks.

### C. Deliberate Indifference to Need for Serious Medical Care

A claim of deliberate indifference to a pretrial detainee's need for serious medical care falls under the Fourteenth Amendment's due process clause, providing the same protection for people in police custody pre-conviction as the Eighth Amendment provides for prisoners post-conviction. *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013). The Sixth Circuit has established "a two-prong test with objective and subjective components to assess" claims that government officials were deliberately indifferent to a pretrial detainee's serious medical needs. *Id.* (citation omitted). The first prong requires determining whether the plaintiff had a "sufficiently serious medical need" under the objective prong. *Id.* (citation omitted). "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. *Blackmore v. Kalamazoo City*, 390 F.3d 890, 897 (6th Cir. 2004). Superficial physical conditions, such

10

as minor "cuts, bruising, and swelling" are not "serious medical needs" requiring constitutionally guaranteed medical treatment. *Burgess*, 735 F.3d at 476 (citation omitted).

The second prong requires determining whether "the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong." *Id.* at 462 (citation omitted). "There must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required." *Id.* (citation omitted).

In this instance, Jones alleges that he asked for medical treatment, but the mere fact that he asked for medical treatment is insufficient to support a 1983 action alleging deliberate indifference to serious medical needs. After reviewing all of the evidence in the record, the Court finds that Jones's alleged injuries were not "so obvious that even a lay person would easily recognize the need for medical treatment." *Blackmore*, 390 F.3d at 897. Rather, the Court finds that the only visible injuries were minor cuts, such as the apparent abrasion on Jones's elbow and possible bruising on his lower back [Doc.36-2] and near his left ear [Doc. 44 at p. 7]. The video footage provided by defendants also supports this finding [Doc. 36-5]. During the approximately two hours of footage, Jones displays no obvious signs of serious injury such that a lay person would recognize the need for medical aid. Jones has no apparent trouble speaking, there is no obvious slurring of his speech, there is no obvious facial or head trauma, and no obvious signs of bleeding.

11

In the complaint, Jones alleges loss of hearing, severe headaches, blurry vision, and nightmares [Doc. 1 at p. 6]. None of these injuries would seem to be the type that would be obvious to a lay person, and the Court found no apparent signs of such injuries in reviewing the video footage available. *See Hammock v. Rogers*, Case No. 1:17-CV-1939, 2019 U.S. Dist. LEXIS 211022, at *49 (N.D. Ohio Nov. 13, 2019) (holding that "minor cuts to [plaintiff's] lips and nose, and a loose tooth" were not the type that a lay person would recognize as needing medical attention).

Jones also argues that he has lost teeth as a result of the alleged excessive use of force, though at least two of the three teeth he lost were removed while he was in jail, and not lost at the scene [Doc. 42]. It is unclear when the third tooth was lost. Certainly, the video footage shows no bleeding from the mouth that would be expected from lost teeth [Doc. 36-5]. Assuming, arguendo, that Jones's teeth were damaged, but not lost, during the alleged use of excessive force, the damage was not so obvious as to alert the average lay person to the need for medical attention. The Court also notes that Jones has not amended his complaint to include allegations related to the loss of teeth, and to the extent that he intends to proceed with such claims, they will need to be included in an amended complaint, which the Court discusses in more detail below.

As to the second prong, the Court finds that there is no evidence that Jinks acted with the necessary intent to deny Jones of obviously needed medical care. Rather, as the Court found above, there were no obvious signs that Jones needed serious medical attention. The minor injuries visible in the photographs taken at the scene are not the type

12

that would require medical attention, and in the absence of some obvious sign that Jones was suffering from a serious medical condition, Jinks was not required to provide Jones with immediate medical attention.

For all of these reasons, the Court finds that Jinks is entitled to qualified immunity as to Jones's claim of deliberate indifference to his serious medical needs. Accordingly, the motion for summary judgment will be granted as to the claim against Jinks.

## III. Amendment of Plaintiff's Complaint

Having resolved the motion for summary judgment, the Court turns now to the issue of plaintiff's failure to amend his complaint to name the proper party as the Arresting Officer. In his complaint, Jones named Brandon Stryker as the Arresting Officer [Doc. 1]. Jones later moved to amend his complaint, indicating that Shane Watson, not Brandon Stryker, was the Arresting Officer [Doc. 22]. Jones's motion to amend was denied because it failed to comply with the Local Rules and the Federal Rules of Civil Procedure [Doc. 23]. Specifically, Jones failed to attach a copy of his proposed amended complaint to the motion, as required by Local Rule 15.1, and he failed to comply with Rule 7(b)(1) of the Federal Rules of Civil Procedure, which requires that motions must state with particularity the grounds for seeking an order and state the specific relief sought [Doc. 23].

Jones moved to amend his complaint a second time, asking to remove Brandon Stryker as a party and replace him with Shane Watson, but he again failed to submit a proposed copy of the amended complaint [Doc. 26]. Because of his failure to submit the proposed amended complaint, the motion was again denied with leave to refile [Doc. 34].

13

More recently, Jones filed a "Motion for Shane Watson to be Accountable," which the Court interprets as a motion to amend [Doc. 56]. However, Jones again failed to submit a copy of his proposed amended complaint. The Court will deny this motion with leave to refile, but the Court will only grant Jones one more chance to correctly amend his complaint.

If Jones wishes to amend his complaint to replace Brandon Stryker with Shane Watson, and to assert any additional claims, then Jones should submit a motion which clearly states why and how he wishes to amend his complaint, **and** he must also submit a **new** complaint which includes **all of the facts and claims** he wishes to assert in this lawsuit. The Court will direct the Clerk of the Court to send Jones a blank Section 1983 complaint form to use for this purpose. Jones shall have **forty-five (45) days** to submit a proper motion to amend **and** the proposed amended complaint. If Jones fails to do so, the Court will find that Jones has failed to prosecute this case and the Court will **dismiss with prejudice all remaining claims** pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

## IV. Motion to Add Evidence

Long after the deadline for responding to the instant motion, plaintiff filed a "Motion to Add Evidence that My Rights Were Violated" [Doc. 54], which the Court interprets as a motion to submit additional evidence and arguments in opposition to the motion for summary judgment. Local Rule 7.1(d) provides that no supplemental briefs shall be filed "without prior approval of the Court, except that a party may file a

14

supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's final brief is filed." E.D. Tenn. L.C. 7.1(d).

While plaintiff does not cite the relevant Local Rule, he does ask permission to submit additional information to the Court. The motion does not explain why plaintiff could not have presented this evidence and arguments with his original arguments. In an abundance of caution, the Court has reviewed the arguments presented in plaintiff's motion, and they do not alter the Court's decisions, set forth above. The Court has already denied summary judgment as to the claim of excessive force, and nothing in plaintiff's motion establishes that Jones's injuries were so severe that a lay person would recognize that he needed medical attention. In the absence of such a showing, Jinks remains entitled to qualified immunity. Accordingly, to the extent that the Court has considered plaintiff's arguments, his motion to add evidence [Doc. 54] will be **GRANTED**.

## V. Motion to Put Into Evidence of Rights Being Violated

Plaintiff has also filed a motion alleging that his right to a fair trial has been violated in this case [Doc. 52]. The Court notes that discovery was stayed pending resolution of the issue of qualified immunity [Doc. 45]. This opinion resolves that issue, allowing the case to proceed as to plaintiff's excessive force claim, and lifts the stay on discovery. To the extent that plaintiff complains because he has filed discovery related motions which have not been ruled on during the stay of discovery, and which now will be ruled on in due course, plaintiff's motion [Doc. 52] will be **DENIED as moot**.

15

## VI.    Conclusion

For the reasons stated above, the Court will **GRANT** defendants' Motion [Doc. 36] for summary judgment as to defendant Jinks and will **DENY** defendants' Motion [Doc. 36] as to defendant Stryker.  Plaintiff's Motion to Add Evidence [Doc. 54] is **GRANTED**. Plaintiff's motion alleging a violation of his right to a fair trial [Doc. 52] is **DENIED as moot**.  Plaintiff's Motion for Shane Watson to be Accountable [Doc. 56] is hereby **DENIED WITH LEAVE TO REFILE** as a Motion to Amend.  Plaintiff shall have forty-five (45) days to submit a proper motion to amend and the proposed amended complaint. Failure to do so will result in the dismissal, with prejudice, of all remaining claims pursuant to Rule 41(b).  The stay of discovery [Doc. 45] in this matter is hereby **LIFTED**.  The Clerk of the Court is **DIRECTED** to send plaintiff a blank Section 1983 complaint form with a copy of this opinion.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE